Whaley, Judge,
delivered the opinion:
Prior to his enrollment as a provisional ensign, United States Naval Reserve Force, June 10, 1918, plaintiff, Her *703 bert Lasher, served in that force in France under successive grades, with detail to aviation duty, first as a landsman and finally as a quartermaster, first class (Aviation). Thereafter, throughout the period involved in this suit, until November 16, 1918, he was on detail involving actual flying in aircraft.
On April 26, 1918, plaintiff was ordered to present himself for examination for promotion to the grade of ensign in the United States Naval Eeserve Force, class 5. On the same day the commanding officer of the naval airport, at Dunkerque, France, ordered a board of medical examiners to convene on said date to examine and report upon the physical qualifications of candidates for promotion.
The record shows that the plaintiff appeared before this board in obedience to orders and was examined and found physically qualified to perform all his duties at sea, and recommended for promotion. On May 23, 1918, another board of naval officers, consisting of three members, certified that “ Herbert Lasher, Q. M. 1-c. (A.) U. S., has the mental, moral, and professional qualifications to perform all these duties of the rank for promotion, to which he is a candidate, to wit, ensign, class 5, U. S. N. E. F., and recommend him for enrollment.”
On May 6, 1918, the plaintiff was injured as the result of the fall of a seaplane while he was on patrol duty, suffering a fracture of the left tibia and fibula.
On June 10, 1918, the commanding officer at the United States naval air station, Dunkerque, France, ordered the plaintiff to report to Assistant Surgeon Albert' M. Stevens, U. S. N. E. F., for physical examination prior to enrollment in the Naval Eeserve Flying Corps, class 5, aá ensign. The plaintiff did report, and the order carries the indorsement “ found physically qualified for admission to the Naval Eeserve Flying Corps.” This was signed by A. M. Stevens, assistant surgeon, U. S. N. E. F.
On June 10,1918, plaintiff was “ assigned provisional rank of ensign, Naval Eeserve Flying Corps ” and was “ appointed a naval aviator for duty involving actual flying in aircraft ” and “ assigned to duty naval air station, Dun-kerque, France.”
*704 The plaintiff claims an increase of 50% in pay and allowances from June 25, 1918, to November 15, 1918, based on the pay and allowances of an ensign, U. S. N. R. F., amounting to $330.56. This amount was disallowed by the Auditor for the Navy Department. The defendant has filed a counterclaim for $1,290.62, being the difference between the pay and allowances paid him as a provisional ensign, class 5, and the pay and allowances of a quartermaster, first class, on flying duty, for the period from June 10, 1918, to June 10, 1919.
The contention of the defendant is that the plaintiff was not advanced in grade and rank pursuant to law, as provided for in the act of March 4, 1913 (37 Stat. 892), and contends that under the act of August 29, 1916 (39 Stat. 587), which provides:
“ No person shall be appointed or commissioned as an officer in any rank in any class of the Naval Reserve Force, or promoted to a higher rank therein, unless he shall have been examined and recommended for such appointment, commission, or promotion by a board of three naval officers not below the rank of lieutenant commander, nor until he shall have been found physically qualified by a board of medical officers to perform the duties required in time of war, except that former officers and midshipmen of the Navy, who shall have left the service under honorable conditions and who shall have enrolled in the Naval Reserve Force, may be appointed in the grade and rank last held by them without examination other than the physical examination above prescribed.”,
the boards which passed on the qualifications of plaintiff were not in strict compliance with the terms of the statute. The act provides that a board of three naval officers, not below the rank of lieutenant commander, shall examine and recommend, and a board constituted as shown in the findings did sit on the plaintiff’s case and duly recommended him. The act also provides that he shall have been found “ physically qualified ” by a board of medical officers, without stating, the number of officers composing the board. An assistant surgeon and an ensign composed the board which passed on plaintiff’s physical qualifications and reported him physically qualified for promotion. The record does not dis *705 close that the ensign who acted as recorder was not a medical officer, and it is to be assumed that he was in the Medical Corps, otherwise he would not have been subject to the orders of that bureau which designated him as a member of the board. There is nothing in this record to show that, under the stress of actual warfare, there was not a substantial compliance with the law, and even if there were minor technical defects in the composition of the boards, these have all been, cured by an act of Congress of May 23, 1930 (46 Stat. 375), which provides as follows (sec. 1) :
“That the assignments of provisional ranks, grades, or ratings heretofore made to members of the Naval Reserve Force or Marine Corps Reserve, including the assignments of higher provisional ranks, grades, or rating than those first assigned, are hereby validated and shall be conclusive for all purposes, from the dates of such assignments. * * * ”
By use of the words “ conclusive- for all purposes,” the Congress has disclosed its desire that the provisional ratings during the war shall no longer be challenged upon highly technical grounds. See Report of Committee on Naval Affairs, April 7, 1930, Senate, Report No. 350, 7lst Congress, 2d session.
In our judgment there was, if any, merely a technical violation in the composition of the boards, and this statute cures such a defect. The plaintiff was examined and on June 10, 1918, assigned the provisional rank of ensign, Naval Reserve Flying Corps, and appointed a naval aviator for duty involving actual flying in aircraft, with duty at the naval air station, Dunkerque, France. The defendant in its brief does not charge collusion and fraud between the surgeon who examined the plaintiff and the plaintiff, but intimates the court should draw such a conclusion because the plaintiff was advanced in grade while suffering from an injury, and his physical condition was known to both the medical board and the plaintiff. The record does not contain a single scintilla of evidence of collusion or fraud. It would require a vivid imagination to impute fraud on the part of the plaintiff in the procurement of his promotion, *706 when every fact in the case eloquently disproves such an imputation.
The plaintiff was injured while flying a naval plane in the line of duty and while on patrol with the naval forces of his country on a foreign shore. It is apparent in reading through every line of the record that the medical examiners, and other officers who recommended the promotion, believed that plaintiff’s injuries were of. a temporary nature and that he would be able to return to duty within a reasonable length of time. He was detailed to the aviation service when he was promoted to the rank of ensign, and this detail remained in force until he was relieved from duty on November 16,1918.
It is now contended that during the period from June 10, 1918, to November 16, 1918, the plaintiff did not fly and therefore is not entitled to the additional pay called for in this hazardous service. His failure to fly was due to his injuries which were received while flying in the service of his country in time of war. There is a general order No. 377 of the Navy Department dated March 14, 1918, which provides as follows:
“ In the case of individuals failing to perform a flight because of physical disability incident to flying, flight orders during the period of such disability will be considered as fully in effect.”
By this regulation the Navy Department itself recognizes that injured aviators are entitled to receive the extra pay during their injuries as long as their detail is not changed. The record shows that the plaintiff did recover from his injuries and flew in the service in subsequent years and was not released from active duty until June 10, 1919.
This court in the case of Lushey v. United States, 56 C. Cls. 411, which was affirmed by the United States Supreme Court in 262 U. S. 62, has held that it is the detail for duty involving actual flying in aircraft and not the number of flights which carries the pay. In the case of Marshall v. United States, 59 C. Cls. 900, which is very similar to the. instant case, this court held that the extra pay is allowed so long as the detail remains unrevoked. See also Clark v. *707 United States, 60 C. Cls. 589; Matteson v. United States, 60 C. Cls. 880; Bradshaw v. United States, 62 C. Cls. 638; Lynch v. United States, 63 C. Cls. 91; Emmons v. United States, 63 C. Cls. 121; Garleton v. United States, 64 C. Cls. 564; Arnold v. United States, 65 C. Cls. 43; and Johnson v. United States, 67 C. Cls. 318.
In tbe case of Samuel E. Brown v. United States, 68 C. Cls. 734, 739, it is stated:
“ In each of these cases the basic principle was that the right to pay went hand in hand with the assignment to the duty. It is clear from all the cases that actual flying or participation in flights was not the test of the right to pay. The fact that in all but one of the cases actual flights took place is not important. The assignment to the duty and the obligation to perform it are the touchstone of the right to pay.”
The cases cited by the defendant have been carefully examined, but none of them is in point. In the instant case the defect, if any, is in the composition of the boards, and in so far as the appointment is thereby affected it is validated by the statute of 1930. It is our opinion that the plaintiff is entitled to recover the. sum of $330.56 and the counterclaim should be dismissed. It is so ordered.
Williams, Judge; Littleton, Judge; Green, Judge; and Booth, Ohief Justice, concur.